IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| HAROLD ALT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 04-1092-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE[1], Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |


Alan Stuart Graf
P. O. Box 98
Summertown, TN  38483

       Attorney for Plaintiff

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Linda S. McMahon as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Page 1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
District of Oregon
Neil Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902
Carol A. Hoch
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Harold Alt brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I reverse

the decision of the Commissioner and remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

Page 2 - OPINION AND ORDER

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.

2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the

claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,

disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A

severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not

have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

Alt applied for disability insurance benefits on January 2, 2002. His claim was denied initially and on reconsideration. After a hearing, the ALJ issued an opinion on December 24, 2003 that concluded Alt was not disabled. The Appeals Council denied Alt's request for review

so he filed this action in federal court. On March 7, 2005, I granted Alt's motion to supplement

the record and remanded the case for further proceedings under Sentence Six of the Act, for

consideration of the new evidence. The ALJ held a supplemental hearing and on February 24,

2006, again found that Alt was not disabled. After the Appeals Council denied Alt's request for

review, he moved to reopen the case in this court.

The ALJ found that Alt has severe impairments of arthritis of the shoulder, degenerative

joint disease of the hips, and diabetes. However, the ALJ also found that these impairments,

were not severe enough to meet or medically equal, either singly or in combination, the

requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security

Regulations. The ALJ concluded that Alt had no medically determinable mental impairment. He

also found that Alt's allegations were not entirely credible. After reviewing the medical

evidence, and discounting the opinions of several physicians, the ALJ found that Alt retained the

residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; can stand

and walk one hour at a time with no overall limit; can sit without limitation; can do no work

above shoulder level; cannot climb ladders, ropes, or scaffolds; can do no constant fingering; and

can do no constant operation of foot controls. Based on vocational expert testimony, the ALJ

found that Alt could return to his past work as a parking lot attendant, as he performed the job,

and was thus not disabled under the Act.

**FACTS**

Alt alleges that he has been disabled since November 28, 2001 due to bursitis, arthritis,

diabetes, and mental problems. He was 64 years old at the time of the second hearing and has a

high school education plus some college. Alt worked steadily since the early 1960s, with 28

years as a bus driver.  He worked for Tri-Met from 1991 to November 2001, when he was forced

to retire because of his numerous absences, inability to help riders with wheelchairs use the bus,

and an arrest.  Alt earned $50,270 from Tri-Met during 2001.  He also worked shorter part-time

stints as a gas station attendant and parking lot attendant.

Alt became homeless four months after he left Tri-Met.  At the first hearing, he brought

all of his belongings in a bag.  He was pushing shopping carts and collecting bottles and cans

four or five hours a day.  His homelessness, including sleeping on the sidewalk, had increased his

arthritic pain.

Alt's degenerative arthritis in his hips causes pain when he stoops, stands, and walks.  He

also has pain in his hands, wrists, and thumbs.  Alt's diabetes has not been well controlled since

he became homeless.  This causes pain and numbness in his feet.  Alt stumbles and falls a lot,

including falls serious enough that he went to hospital emergency rooms for treatment.  Rotator

cuff problems cause shoulder pain and reduce Alt's ability to lift things higher than table height.

He has used Vicodin for several years to manage the pain.

At the time of the second hearing, Alt was having worse memory problems.  To get to the

hearing, he first went to the wrong floor after misreading the appointment card.  Then a guard

brought his jacket, water bottle, and briefcase that Alt had forgotten.  He lost his drivers' license

for medical reasons, according to DMV.  Alt attempted to take a knowledge test from DMV to

get the license reinstated but had failed the test three times.  Alt's pain had worsened.  He was off

the streets and had been living in apartments and hotels, now that he was receiving $1,800 a

month from Social Security retirement and his Tri-Met pension.  He was still having trouble

keeping stable housing, however.

## DISCUSSION

I.    Impairments

Alt contends that the ALJ erred by failing to conclude that he had severe impairments of cognitive disorder, organic brain dysfunction, dementia, and chronic bronchitis.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  The threshold at step two is a low one.  It is a "de minimis screening device [used] to dispose of groundless claims"  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotation omitted).  For reasons explained below, I find that Alt has severe impairments of cognitive disorder and dementia but does not have a severe impairment of organic brain dysfunction.  I also do not find that he has a severe impairment of chronic bronchitis.  Although he was treated for this several times, there is no evidence that it impaired his work activity.

Alt also disagrees with the step three assessment that his impairments do not meet or equal a listed impairment.  Alt provides neither argument nor citation into the record for these contentions, other than in his discussion of the physicians' opinions, which I address below.

Alt bears the burden of proving that he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  Because he has not attempted to meet his burden, I decline to address the contention.

II.    Physicians' Opinions

Alt contends that the ALJ improperly rejected the opinions of three physicians who either treated or examined him:  Dr. Houle, Dr. Gostnell, and Dr. Krulewitch.  The Commissioner

concedes that the ALJ failed to address the opinions of the State agency medical consultants, Dr. McDonald and Dr. Eder.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831.

A.    Dr. Houle

Dr. Houle, Alt's treating physician at the Multnomah County Health Department's Westside Health Center since February 2004, wrote a letter on December 14, 2005 explaining that Alt's physical problems were reasonably well controlled, although the degenerative joint disease in his hips impaired his mobility and required some assistance from care givers for Alt to perform some activities of daily living. Dr. Houle also stated:

> He is significantly impaired in other ways however. Mr. Alt regularly comes to the clinic with a variety of psychosocial, personal, financial or housing problems. Intervention by the social worker is frequently needed.

Over the past two years we have seen an ongoing repetitive pattern of poor judgment, failed personal interactions, short term memory problems and behavior which shows he lacks insight into the consequences of his actions.

Psychiatric medications have helped him somewhat, but even with medications he is impaired.

It is likely he has an organic brain disorder that is at least partially responsible for his impaired functioning.

For this reason, I do not believe Mr. Alt is employable for any type of work.

Tr. 665.

The ALJ rejected Dr. Houle's opinion because Dr. Houle stated that Alt "likely" has an organic brain disorder when the evidence was not sufficient to establish an organic brain disorder as a firm diagnosis. The ALJ also concluded that Dr. Houle was opining on a vocational issue rather than on a functional limitation.

I agree that Dr. Houle did not have adequate support for his qualified diagnosis. I also agree that opining that Alt is not employable is a decision reserved for the Commissioner. Based on the chart notes, I would have credited Dr. Houle's opinion if he had listed functional limitations based on Alt's mental impairments, but the doctor did not state his opinion in this fashion. Consequently, I find that the ALJ properly rejected Dr. Houle's opinion by giving clear and convincing reasons.

B.      Dr. Krulewitch

Dr. Krulewitch, a geriatrician, examined Alt on July 9, 2003. He stated:

The first [deficit] is in the motor function. He is incapable of any type of lifting because of shoulder and hand injuries, and this would include both the heavy lifting as well as repetitive lifting. The patient's hip injuries make any kind of standing, squatting impossible. The patient's second limitation is stage II

Page 9 - OPINION AND ORDER

cognitive impairment.  Clearly because of the diabetes, he has small vessel disease
and the possibility of stroke recently confirmed by CT report.  It is our opinion
that he has probably experienced other small vessel infarcts which did not show
up, which may account for further difficulties in processing information and
performing in basic IQ and functions which would limit any kind of steady
employment.

Tr. 437.  Dr. Krulewitch also noted that Alt's ongoing depressive disorder as well as decline in

his economic status suggested that his decisionmaking may be impaired by schizoaffective

personality disorder patterns which may require further psychiatric evaluation.  In summary,

Dr. Krulewitch concluded that Alt was not capable of any type of steady work for eight hours due

to a combination of motor, psychiatric, and cognitive degenerative disease.

The ALJ gave little weight to Dr. Krulewitch's opinion because it was inconsistent with

the treatment record and with Alt's daily activities.  The ALJ compared Alt's activity of pushing

a cart and collecting cans for four to five hours a day with the doctor's conclusion that Alt is

incapable of any kind of standing.  The record also contains evidence, however, that Alt stops

and rests a lot during this activity, cannot walk a block without resting 10 or 15 minutes, and has

trouble bending over to pick up the cans.  His limited pace is evidence that he is incapable of any

kind of standing at an endurance level that would be required at work.

The ALJ also discounted Dr. Krulewitch's opinion because he is not a psychiatrist and

Alt's psychological evaluation revealed evidence of symptom embellishment.  Dr. Krulewitch

does specialize in geriatrics.  Alt was 62 at the time of the examination and was showing

increasing signs of a cognitive impairment, if you compare his long work history with his rapid

decline after leaving Tri-Met.  Moreover, Dr. Krulewitch based the conclusion on cognitive

impairment on results from a CT scan which showed small vessel disease caused by the

uncontrolled diabetes and the possibility of stroke.  As explained below, Dr. Gostnell explains the effect of the symptom embellishment.

The ALJ did not provide clear and convincing reasons supported by substantial evidence in the record to reject Dr. Krulewitch's opinion.[2]

C.    Dr. Gostnell

Dr. Gostnell, a neuropsychologist in the Neurosurgery Department at OHSU, performed extensive testing on Alt on October 20, 2005.  Alt's Full Scale IQ was 67.  Dr. Gostnell diagnosed Alt with dementia due to multiple etiologies, rule out schizoaffective disorder.  The doctor concluded:

> Although Mr. Alt's test results indicated some symptom embellishment, his general presentation was quite convincing for confusion, impaired tracking and focus, short-term memory impairment, and very poor judgment, all consistent with his neuropsychological profile.  Evidence for exaggeration of impairments does not necessarily preclude the presence of genuine deficits, especially in a patient for whom there is compelling evidence of multiple difficulties of this nature.  He has multiple risk factors for neurocognitive impairment, including and [sic] trauma history, poorly controlled diabetes and cerebrovascular events; with further cognitive interference from psychiatric symptoms  including a possible schizoaffective disorder.  Given this complex history, it is really impossible to sort out the relative contributions of organic and psychological etiological elements.
>
> From a functional perspective, Mr. Alt lacks the capacity to retain and carry out complex verbal instructions, and his social interactions are compromised by his poor communications skills and perseverations.  Given his long history as a bus driver, these capacities have clearly diminished, and he is certainly unable to perform such work at this time.

---

[2]  Although Dr. Krulewitch's opinion concerning Alt's physical impairments is contradicted by the State agency doctors, I am concentrating on the opinion concerning the mental impairments, which is uncontradicted.  Even if the standard was to state specific and legitimate reasons for rejecting the opinion, I find that the ALJ failed to meet the lower standard.

Page 11 - OPINION AND ORDER

Tr. 447.  Dr. Gostnell found that Alt had marked limitations in understanding and remembering

detailed instructions, carrying out detailed instructions, the ability to make judgments on simple

work-related decisions, responding appropriately to work pressure in a usual work setting, and

responding appropriately to changes in a routine work setting.  All other categories had moderate

limitations.

The ALJ rejected Dr. Gostnell's opinion for several reasons.  First, he noted that there

was not even a suggestion of mental health problems prior to or during the July 2003 hearing.  If

the dementia is brought on by age or worsening diabetes, however, it may not have been severe

enough to warrant medical intervention prior to July 2003.  I also note that Alt's attorney was

allowed to keep the July 2003 record open so that the attorney could arrange an evaluation by a

geriatrician, Dr. Krulewitch.

Second, the ALJ stated that in light of Alt's poor effort and inconsistencies, noted by Dr.

Gostnell, it is impossible to determine the extent of any mental impairment.  Dr. Gostnell,

however, a specialist in the field, balanced the symptom embellishment against Alt's presentation

at the examination, his neuropsychological profile as determined by extensive testing, and his

multiple risk factors, some of which are supported by objective medical evidence.  The ALJ's

limited reasons for rejecting Dr. Gostnell's opinion are insubstantial in light of the support the

specialist gave for the opinion.

The ALJ did not provide clear and convincing reasons supported by substantial evidence

in the record to reject Dr. Gostnell's opinion.

D.    Dr. McDonald and Dr. Eder

The ALJ did not address the conclusions of these nonexamining doctors, who concentrated on Alt's physical symptoms.  The Commissioner concedes this error.

III.    Remedy

The issue, then is the remedy.  Alt seeks a finding of disability but the Commissioner argues that rehearing is required, even if I credit the doctors' opinions, because the opinions do not cover the period back to Alt's alleged onset date of November 28, 2001.

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant.  Id.  On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations

established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

I find that this is the unusual case in which a remand for a finding of disability is the appropriate remedy. Based on the opinion of Dr. Krulewitch, Alt was disabled by July of 2003. That is confirmed by Dr. Gostnell's opinion as of October 20, 2005. I see no reason not to credit both opinions. Although the doctors had not examined Alt at the time of his alleged onset date of November 28, 2001, he was clearly having severe mental problems as of that date. The most telling evidence of this is the fact that Alt was homeless within four months of being terminated by Tri-Met, even though he had earned an above-average income for many years. The second reason I am not remanding this case for rehearing is because the Commissioner has already made two attempts to analyze the situation correctly and has failed both times. Over five years have passed since Alt's application. I am not willing to subject him to a third attempt.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____18th_____ day of April, 2007.


        ____/s/ Garr M. King_____
        Garr M. King
        United States District Judge